# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

| | |
|---|---|
| Jean Sandberg, | Civil No. 14-4033 (DWF/HB) |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| Megan J. Brennan, *Postmaster General*, | |
| Defendant. | |

_____

Emma Denny, Esq., and Nicholas G. B. May, Esq., Fabian May & Anderson, PLLP, counsel for Plaintiff.

Ana H. Voss and Erin M. Secord, Assistant United States Attorneys, counsel for Defendant.

_____

## INTRODUCTION

This matter is before the Court on a Motion for Partial Summary Judgment brought by the United States Postal Service ("USPS" or "Defendant") on Plaintiff Jean Sandberg's claims of retaliation in violation of 42 U.S.C. § 2000e. (Doc. No. 24.) For the reasons set forth below, the Court grants in part and denies in part the motion.

## BACKGROUND

Since 1989, Plaintiff has been employed by the USPS as a Maintenance Operations Support ("MOS") Clerk. (Doc. No. 27 ("Voss Decl.") ¶ 3, Ex. 1 ("Sandberg Dep.") at 14.) The present lawsuit involves allegations of sexual harassment and

retaliation during Plaintiff's tenure as a clerk in the MOS facility in Eagan, Minnesota. (Doc. No. 1, Compl. ¶ 5.)[1]

In 1998, Plaintiff filed a lawsuit against USPS asserting claims for sexual harassment, sex discrimination, and retaliation. *Sandberg v. Henderson*, Civ. No. 98-1653 (the "1998 lawsuit"). In the 1998 lawsuit, Plaintiff's sex discrimination and sexual harassment claims were dismissed on summary judgment. (ECF Civ. No. 98-1653, Doc. No. 120.) After a jury trial, Plaintiff prevailed on her retaliation claim. (*Id*., Doc. Nos. 149, 154.) In 2003, Plaintiff was reinstated at USPS pursuant to a union arbitration. (Compl. ¶ 6.) Once reinstated, Plaintiff submits that her prior lawsuit was common knowledge and discussed openly by coworkers, managers, and supervisors. (Doc. No. 30 ("Sandberg Aff.") ¶ 6.)

In August 2011, Plaintiff was transferred to the first shift (10:00 p.m. to 6:30 a.m.) at the Eagan facility. (*Id*. ¶ 7.) In that position, Plaintiff worked with David Cornwall ("Cornwall"), another MOS Clerk. (*Id*.) Tim Wolney ("Wolney") was Plaintiff's and Cornwall's direct supervisor. (*Id*.) At the heart of the present lawsuit are Plaintiff's allegations that Cornwall sexually harassed her. (*Id*. ¶¶ 8, 9.) Plaintiff asserts that Cornwall engaged in harassing conduct, such as hugging her and making comments about her physical appearance. (Compl. ¶ 13; Sandberg Aff. ¶ 8.) Plaintiff alleges that during the summer of 2012, Cornwall's "harassment became highly offensive sexual touching and comments which increased in frequency and severity." (Sandberg Aff. ¶ 8.)

---

[1] USPS does not seek summary judgment on Plaintiff's sexual harassment claim.

Plaintiff also contends that from May through November 2012, she reported Cornwall's conduct to Wolney on numerous occasions and that Wolney took no action. (*Id.* ¶ 10.)

During the night shift on November 28, 2012, there was a confrontation between Plaintiff and Cornwall involving paperwork. (Compl. ¶ 16; Sandberg Aff. ¶ 11; Doc. No. 27, Voss Decl. ¶ 11, Ex. 9 ("Cornwall Aff.") at 5.) Plaintiff alleges that during the confrontation, she told Cornwall to stop his sexual harassment, Cornwall told her to file an EEO complaint, and she told him that she was going to management to report his sexual harassment. After the incident, Wolney spoke separately with both Cornwall and Plaintiff. (Voss Decl. ¶ 23, Ex. 21 ("Wolney Dep.") at 33-34.) On December 3, 2012, Wolney met with Plaintiff again, after which he initiated a formal inquiry and separated Cornwall and Plaintiff at work. (Voss Decl. ¶ 24, Ex. 22; Wolney Dep. at 51-52.) On December 22, 2012, Cornwall was moved to a different shift temporarily. (Voss Decl. ¶ 24, Ex. 22.) On January 23, 2013, Cornwall moved back to Plaintiff's shift, but was stationed in an office down the hall from the MOS office, and was again moved to a different shift in April 2013. In June 2013, Cornwall was excessed from MOS at the facility where Plaintiff worked. (Sandberg Aff. ¶ 26.)

Plaintiff also alleges that she was subjected to a hostile work environment based on retaliation for reporting harassment. First, Plaintiff alleges that coworkers avoided her based on their knowledge that she filed the 1998 lawsuit. Specifically, Plaintiff points to evidence that a supervisor, Shane Witwicke ("Witwicke") told her coworkers to be "careful" around her due to the fact that she brought the 1998 lawsuit. (Compl. ¶ 9; Voss

Decl. ¶ 10, Ex. 8 ("Witwicke Dep.") at 15; Doc. No. 34 ("Bige Aff.") ¶ 2 (In August 2011, "Witwicke [] stated 'Don't talk to [Plaintiff], she's a troublemaker. She'll be nice to your face, but put a knife in your back' in reference to her previous lawsuit against USPS."). Witwicke also told a coworker that Plaintiff had filed suit against Defendant and was able to "wiggle her way back" after being fired because she filed the lawsuit. (Bige Aff. ¶ 3.)

Second, Plaintiff alleges she was retaliated against for complaining about Cornwall's sexual harassment both before and after Defendant initiated a formal inquiry into the November 28, 2012 incident. Generally, Plaintiff argues that Defendant failed to respect the confidentiality of her reports, pointing to evidence that Wolney and Cornwall openly discussed Plaintiff's allegations with coworkers and that Wolney sympathized with Cornwall. (Doc. No. 31 ("Denny Decl.") ¶ 3, Ex. 1 ("Kleeberger Dep.") at 65-66; *id.* ¶ 8, Ex. 6 ("Cornwall Dep.") at 54.) In addition, Plaintiff submits that after reporting Cornwall's behavior in November 2012, colleagues openly made disparaging comments about her complaint and her mental health. (Sandberg Aff. ¶¶ 12, 13, 16, 19, 20, 22, 23; Denny Decl. ¶¶ 23, 24, Exs. 21, 22; Denny Decl. ¶ 4, Ex. 2 ("Volkman Dep.") at 59-64; Doc. No. 32 ("Campbell Aff.") ¶ 4.) For example, in April 2013, Plaintiff complained to Wolney about the fact that Cornwall and another MOS Clerk, Karen Volkman ("Volkman") had made disparaging comments about Plaintiff's health, age, and

competence. (Voss Decl. ¶ 17, Ex. 15 ("Sandberg EEO Aff.") at 45, 48.)[2] Plaintiff also submits that after reporting harassment to Wolney, he discouraged her from making further reports. (Denny Decl. ¶ 15, Ex. 13 at 12.) In addition, Plaintiff asserts that her workload was increased, she was denied training opportunities (Denny Decl. ¶ 44, Ex. 42; Sandberg Aff. ¶ 25), she was wrongly accused of missing shifts and other infractions (Denny Decl. ¶ 28, Ex. 26), and she was singled out for differential treatment by, for example, having her breaks monitored and being subjected to increased surveillance. (Sandberg Aff. ¶ 18; Kleeberger Dep. at 82-83; Denny Decl. ¶ 41, Ex. 39 (Meeting Tr.) at 25-27; Denny Decl. ¶ 42, Ex. 40.) In addition, Plaintiff claims that Wolney was not adequately responsive to her numerous complaints about harassment. (Sandberg Aff. ¶¶ 9-10.)

On January 11, 2013, Plaintiff contacted an EEO counselor regarding the allegations at issue in this lawsuit, filed her Pre-Complaint on January 24, 2013, and filed her formal Complaint on April 29, 2013. (Sandberg Aff. ¶ 29.) The EEO accepted the following issues for investigation: (1) in August 2011, a supervisor told coworkers that they should not talk to Plaintiff; (2) in July 2012 and various other times, Plaintiff reported coworker sexual harassment and management failed to take appropriate action; (3) in October 2012, management increased Plaintiff's workload and blamed Plaintiff for

---

[2] Plaintiff contends that Volkman was a close friend of Cornwall's and that Volkman made disparaging comments about Plaintiff's mental health days after Plaintiff complained to Wolney about the November 28, 2012 incident. (Sandberg Aff. ¶ 12.) According to Plaintiff, Volkman also explained that she thought Plaintiff was falsely accusing Cornwall. (*Id*.)

5

unfinished work; (4) on or around December 4, 2012, Plaintiff was the only employee required to have scheduled breaks; (5) on unspecified dates, training was withheld; (6) on unspecified dates, Plaintiff was denied copies of her Request for Notification of Absence; and (7) on June 5, 2013, Plaintiff's assignment order for the period June 8 through July 12, 2013, was rescheduled. (Voss Decl. ¶ 5, Ex. 3.) Plaintiff was advised that any issue that occurred before November 26, 2012, was untimely, and that Plaintiff was required to provide the dates for all specified incidents. (Voss Decl. ¶ 5, Ex. 3.)

Plaintiff filed the present lawsuit on September 30, 2014. (Compl.) Plaintiff asserts two claims: (1) sex discrimination/hostile work environment in violation of 42 U.S.C. § 2000e, *et seq.*; and (2) retaliation in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* (*Id.* ¶¶ 30-38.) This motion pertains to only Plaintiff's retaliation claim.

## DISCUSSION

### I.  Legal Standard

Summary judgment is appropriate if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Courts must view the evidence and all reasonable inferences in the light most favorable to the nonmoving party. *Weitz Co., LLC v. Lloyd's of London*, 574 F.3d 885, 892 (8th Cir. 2009). However, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy and inexpensive

determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank v. Magna Bank of Mo.*, 92 F.3d 743, 747 (8th Cir. 1996). A party opposing a properly supported motion for summary judgment "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *see also Krenik v. Cty. of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995).

## II.     Retaliation

Plaintiff claims that she was retaliated against for complaining about sexual harassment in violation of 42 U.S.C. § 2000e-3(a), which prohibits an employer from discriminating against an employee because the employee "has opposed any practice made an unlawful employment practice by this subchapter . . . [or made a] charge . . . in an investigation, proceeding, or hearing under this subchapter." 42 U.S.C. § 2000e-3(a); *see also Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 59 (2006) (noting that Title VII forbids employer actions that "discriminate against" one who opposes an unlawful practice).

The Court analyzes this case under the framework set forth under *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under that framework, a plaintiff must first establish a prima facie case of retaliation by demonstrating that she engaged in a protected activity, that she suffered an adverse employment action, and that there was a

causal connection between the two. *Ellis v. Houston*, 742 F.3d 307, 323 (8th Cir. 2014). If a plaintiff establishes a prima facie case, the burden shifts back to the employer to articulate a legitimate, non-retaliatory reason for its action, after which the burden shifts back to the plaintiff to point to evidence that creates a fact issue that the proffered reason was pretextual and that creates a reasonable inference that the defendant acted in retaliation. *Stewart v. Indep. Sch. Dist. No. 196*, 481 F.3d 1034, 1043 (8th Cir. 2007).

In her briefing, Plaintiff limits her retaliation claim to a retaliatory hostile work environment (retaliatory harassment). In *Burlington*, the Supreme Court held that the "scope of the antiretaliation provision extends beyond workplace-related or employment-related retaliatory acts and harm" and that Title VII retaliation claims could be based on a hostile work environment that is "materially adverse." 548 U.S. at 67-68.[3] To show that certain actions are "materially adverse," a plaintiff must show that the actions "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id*. at 68; *see also Stewart*, 481 F.3d at 1042 (holding that *Burlington* established the "standard to define the concept of a hostile work environment for the purpose of retaliation claims under Title VII"). Thus, the question here is whether there is evidence of retaliatory harassment that would have deterred a reasonable employee from engaging in protected activity. *See Burlington*, 548 U.S. at 68. Further,

---

[3]    The Supreme Court noted that before its decision in *Burlington*, the Eighth Circuit had adopted a more restrictive approach, employing a standard that limited actionable retaliatory conduct to acts that are related to employment or the workplace, such as hiring, discharging, and compensating. *Burlington*, 548 U.S. at 60.

in cases involving allegations that a coworker, rather than a supervisor, engaged in harassment, a plaintiff must also show that "the employer knew or should have known of the harassment and failed to take proper action." *Ryan v. Capital Contractors, Inc.*, 679 F.3d 772, 778 (8th Cir. 2012). To establish a causal connection, the retaliation must be a "but for" cause of the adverse employment action. *Univ. of Tex. Sw. Med. Ctr. v. Nassar,* 133 S. Ct. 2517, 2534 (2013).

Here, Plaintiff claims that: (1) she engaged in protected activity by (a) filing her lawsuit against USPS in 1998, (b) reporting Cornwall's sexual harassment and retaliatory harassment at various times from May to November 2012, and (c) reporting ongoing harassment after the incident with Cornwall on November 28, 2012; (2) she suffered a materially adverse employment action; (3) she suffered injury as a result of the retaliation; and (4) the retaliation was causally linked to her protected activity.

### A. Previous 1998 Lawsuit

First, the Court considers Plaintiff's claim that she was retaliated against for filing her 1998 lawsuit. Specifically, Plaintiff alleges that she suffered a materially adverse employment action for filing the 1998 lawsuit when, for example, Wolney informed Plaintiff's coworkers that she made harassment allegations and that they should be "careful" around her. Plaintiff points to evidence that in August 2011, Witwicke told another worker that Plaintiff was a "troublemaker" in reference to her previous lawsuit. Plaintiff alleges that because of such statements, her coworkers avoided her, gave her the cold shoulder, or were openly hostile towards her. Defendant argues that Plaintiff's

claim of retaliation based on her prior lawsuit is untimely and otherwise fails.

Aside from any potential issues regarding Plaintiff's failure to exhaust administrative remedies for this claim, the Court concludes that Plaintiff has not pointed to record evidence to support causation as to her retaliation claim related to her previous lawsuit. While not dispositive, a gap in time between the protected activity and the adverse employment action weakens an inference of retaliatory motive. *Stewart*, 481 F.3d at 1044 (finding a six-month gap between a complaint and the alleged adverse action was too remote to support a finding of causation). Here, Plaintiff relies on Witwicke's statement that people should be "careful" around Plaintiff and, generally, her coworkers' knowledge of her 1998 lawsuit and resulting avoidance of Plaintiff. These actions occurred more than ten years after her 1998 lawsuit. Moreover, there is no evidence that any of the people involved in the lawsuit and those allegedly involved in the current retaliation were the same. Finally, the statement to "be careful" in Plaintiff's presence, in and of itself, does not necessarily indicate a desire to retaliate, but instead could demonstrate a desire to placate Plaintiff. *See id*. at 1045. The vague nature of the statements and treatment by coworkers coupled with the more than ten-year gap cuts against a reasonable finding of causation. Accordingly, Plaintiff's retaliation claim is properly dismissed insofar as it is based on retaliation for filing the 1998 lawsuit.

B.     **Alleged Retaliation from May to November 2012**

Plaintiff claims that she engaged in protected activity when she reported Cornwall's behavior, including incidents of sexual harassment, to Wolney numerous times from May to November 2012.  Taking the evidence in the light most favorable to Plaintiff, a reasonable jury could conclude that these reports constitute protected activity. *See, e.g.*, *Fercello v. Cty. of Ramsey*, 612 F.3d 1069, 1084 (8th Cir. 2010) (holding that verbal report of sexual harassment to supervisor constitutes protected conduct).  Plaintiff does not clearly set out exactly what alleged retaliatory actions occurred between May and her report in November 2012, but the Court gleans that Plaintiff relies on the following:  (1) the fact that Wolney was aware of Cornwall's odd behavior and alleged harassment and failed to address it;  (2) general allegations that coworkers engaged in a campaign of retaliatory harassment by cursing at her, using derogatory slurs, and openly and negatively discussing her 1998 lawsuit and complaints of harassment against Cornwall; and (3) that her workload was increased because Cornwall would not complete his work and Plaintiff had to complete it for him.

The Court concludes that Plaintiff's claim of retaliation for the time period from May to November 2012 fails as a matter of law.  First, Plaintiff has not pointed to specific instances of retaliatory harassment during this time period that are causally connected to any complaints of harassment that she made.  Instead, Plaintiff cites to only vague allegations without substantiating the allegations in time or demonstrating retaliatory intent.  Likewise, there is no evidence of retaliatory intent as to her alleged

11

workload increase. Instead, the record shows that any workload increase for Plaintiff in October 2012 was because she was expected to complete Cornwall's unfinished work. While this may have been true, Plaintiff failed to connect that incident with any retaliatory intent on Wolney's behalf. Instead, the vague allegations of retaliation for this time period appear to be akin to "petty slights or minor annoyances that often take place at work and that all employees experience." *Burlington*, 548 U.S. at 68 (noting that petty slights and minor annoyances do not deter victims of discrimination from filing complaints); *AuBuchon v. Geithner*, 743 F.3d 638, 644 (8th Cir. 2014) (same). Finally, Plaintiff argues that Wolney's failure to do anything about her coworker's retaliatory harassment during this time period constitutes an adverse action. There is record evidence that Plaintiff was complaining about her coworkers, including Cornwall, during this time period. Some of the complaints about Cornwall involved allegations of sexual harassment, but many of the complaints about her coworkers involved complaints unrelated to Cornwall's behavior. The Court concludes that Plaintiff has failed to point to evidence that, during this time period, any harassment by coworkers[4] was causally connected to any harassment complaint.

For the above reasons, no reasonable juror could conclude that Plaintiff was retaliated against for her complaints during the time period from May to November 2012.

---

[4]  The Court again points out that Plaintiff has a separate claim for sexual harassment based on Cornwall's behavior that is not part of the pending motion.

### C.   Retaliation Claims after December 2012

Plaintiff also claims that she was retaliated against after reporting the November 2012 incident with Cornwall. In support, Plaintiff points to the following evidence: (1) Defendant failed to respect the confidentiality of her report, pointing to evidence that Wolney and others openly discussed Plaintiff's allegations with coworkers and sympathized with Cornwall; (2) after reporting Cornwall, Plaintiff experienced retaliation from her coworkers who made numerous disparaging comments about her complaint and her mental health; (3) Wolney discouraged Plaintiff from making further reports of harassment, assigned her additional work, and denied her training opportunities; and (4) Plaintiff was wrongly accused of work infractions and singled out for differential treatment by, for example, being subjected to increased surveillance and monitoring. Further, Plaintiff asserts that she was denied a position that she had been approved to fill because a coworker refused to work with Plaintiff because of her previous harassment allegations. (Denny Decl. ¶ 33, Ex. 31; Sandberg Aff. ¶ 24.)

Defendant disputes nearly all of Plaintiff's factual allegations and argues that many of the above examples are merely "petty slights or minor annoyances that often take place at work" or are the result of "personality conflicts" among coworkers. *See, e.g.*, *Burlington*, 548 U.S. at 68. Defendant also argues that none of the above actions was materially adverse or retaliatory in nature and that the actions do not rise to the level of a hostile retaliatory environment. For example, Defendant argues that there was a legitimate, non-discriminatory reason to require Plaintiff to take scheduled breaks—

namely, to keep Cornwall away from Plaintiff. In addition, Defendant argues that the allegations that Wolney increased Plaintiff's workload and that Plaintiff was denied a transfer lack any retaliatory motive or evidence of pretext. Indeed, as to Plaintiff's claim that she was denied an assignment to a purchasing position, Defendants argue that multiple weak inferences are required to support causation. Defendant also argues that it is entitled to summary judgment on Plaintiff's retaliation claims because it addressed her allegations beginning in December 2012 and Plaintiff failed to take advantage of the corrective actions offered.

After careful consideration, the Court concludes that, taking the evidence in the light most favorable to Plaintiff, there are numerous factual disputes surrounding Plaintiff's allegations of retaliatory harassment after the November 28, 2012 incident, as well as factual issues as to Defendant's alleged legitimate reasons for its actions, and any showing of pretext. Taking the record as a whole, the Court finds that a reasonable juror could conclude that Defendant's actions would dissuade a reasonable employee from filing a charge of sexual harassment. In addition, a reasonable juror could conclude that the actions taken were causally linked to Plaintiff's report of harassment and caused her injury.

## CONCLUSION

While a portion of Plaintiff's retaliation claim survives Defendant's motion for summary judgment because of existing issues of material fact, the Court notes that a victory at this stage of the litigation is no guarantee that Plaintiff will ultimately prevail at

trial on her retaliation claim.  Indeed, a jury could also reasonably resolve many of the factual issues in favor of Defendant.  For this reason, the Court believes that settlement would serve the interests of all parties.

## ORDER

Based upon the foregoing, and the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Defendant's Motion for Partial Summary Judgment (Doc. No. [24]) is **GRANTED IN PART** and **DENIED IN PART** as follows:  Plaintiff's retaliation claim is **DISMISSED** insofar as it pertains to alleged retaliation for filing the 1998 lawsuit against Defendant and for alleged retaliation from May 2012 to November 2012.  The remainder of Plaintiff's retaliation claim remains.

Dated:  February 2, 2017                    s/Donovan W. Frank
                                            DONOVAN W. FRANK
                                            United States District Judge